# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

In the Matter of: }
BEVIN SITHOLE } CASE NO. 15-82649-CRJ-13
SSN: XXX-XX-3690 }
} CHAPTER 13
Debtor(s). }


BEVIN SITHOLE } AP NO. 16-80029-CRJ-13
}
Plaintiff(s), }
v. }
}
REDSTONE FEDERAL CREDIT UNION }
}
Defendant(s). }

## MEMORANDUM OPINION

Before the Court is the Complaint by Bevin Sithole (the "Debtor") against Redstone Federal Credit Union ("Redstone") seeking to determine the secured status of Redstone's second mortgage on the Debtor's principal residence. The Court conducted a trial of this matter on June 28, 2016 and heard the testimony of Julie Glenn Davis, a certified real estate appraiser, and the Debtor regarding the value of the property. The Debtor's appraiser having failed to appear at trial, only Redstone's appraisal was admitted into evidence. The Court having considered the evidence and arguments of counsel, and for the reasons set forth below, finds that the Debtor's principal residence is valued at $327,000 which amount exceeds the first mortgage on the home.

The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. To the extent any of the findings of fact constitute conclusions of law, they are adopted as such. Further, to the extent any of the conclusions of law constitute findings of fact, they are adopted as such.

## FINDINGS OF FACT

1. On September 30, 2015, the Debtor filed for relief under Chapter 13 of the Bankruptcy Code and listed his place of residence as 165 Placed Drive, Harvest, Alabama. On Schedule A- Real Property, the Debtor valued the property at $290,000.

2. On the petition date, CitiMortgage, Inc. ("CitiMortgage") held the first mortgage on the real property. On November 3, 2015, CitiMortgage filed a proof of claim, Claim No. 2, in the amount of $298,431.98 with 2% interest and listed its claim as fully secured.[1]

3. Redstone holds a second mortgage on the property. On October 16, 2015, Redstone filed a proof of claim, Claim No. 1, in the amount of $79,002.53 with 3.25% interest. Redstone listed its claim as fully secured.

4. During the trial, the parties stipulated that the real property is subject to the first mortgage in the amount listed on the proof of claim filed by CitiMortgage to which no objection has been filed. Accordingly, the real property is subject to the first mortgage in the amount of $298,431.98 as stipulated.

5. At trial, Redstone called an appraiser to testify. Julie Glenn Davis ("Davis") was qualified as an expert in the field of residential home appraisals without objection. Davis is the owner of Griffin Appraisals. She has been an appraiser for fourteen years and has been licensed by the State of Alabama as a Certified Appraiser for twelve years.

6. Using a sales comparison approach, Davis testified as to her opinion that the market value of the home, "as is," was $365,000 as of May 25, 2016. Davis prepared an Appraisal of Real Property valuing the home in its current condition based on a visual inspection of the interior and exterior of the home. Defendant's Ex. A.

---

[1] On February 3, 2016, Wilmington Savings Fund Society, FSB, DBA Christina Trust, not individually but as trust for Ventures Trust 2013-I-H-R, filed a Transfer of Claim other than for Security pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., providing notice of transfer of the claim.

7. Davis testified that the home is under construction and is currently uninhabitable. In determining the market value of the property, Davis included an allowance of $125,000 for the cost to cure or finish the home. The $125,000 cost to cure allowance included $5,000 for landscaping, $70,000 for kitchen installation, $10,000 for completing the bathrooms, and $15,000 for HVAC units and ductwork. Davis testified the kitchen is completely unfinished as there are no kitchen cabinets or appliances, the landscaping has not been installed, the HVAC has not been installed, the ductwork must be replaced, the bathrooms are not complete, and there is a leak in the roof.

8. On cross-examination, Davis admitted that she is not a licensed contractor and she did not obtain bids for any of the allowance estimates. She estimated the allowances using an industry cost handbook and relying on her experience as a certified appraiser.

9. On the first page of the appraisal, Davis indicated that there were no physical deficiencies or other adverse conditions that affect the livability of the property. Davis testified that she should have answered the question in the affirmative as the property is not currently livable without a kitchen and other necessities.

10. In conducting her appraisal, Davis used the sales prices of three properties that were finished homes sold in arms' length transactions. There is no indication that any of the homes were sold unfinished. The appraisal provides that adjustments were made for the condition of the homes based on the estimated cost to complete the construction of the Debtor's home.

11. The Debtor testified that he first began constructing the home himself after his previous home located on the same lot was destroyed by a tornado in 2011. The Debtor has not been able to complete the construction because he experienced a one year delay during which he was not able to work on the home. According to the Debtor, the allowances used by Redstone's appraiser are inadequate for the installation of landscaping and the HVAC units.

12. The Debtor believes that it will cost approximately $25,000 to landscape the yard. Although the Debtor is not a licensed contractor, he testified based on his personal experience landscaping the

3

same lot prior to the 2011 tornado. In 2006, the Debtor paid $5,000 for sod for the front yard which he installed himself. The Debtor estimates that it will cost approximately $18,000 to $20,000 to sod the entire lot, plus an additional $5,000 for shrubbery.

13. The Debtor further testified that he paid $18,000 to $20,000 for HVAC units for this home. The HVAC units were stolen during the one year period during which the Debtor was unable to work on the home. Accordingly, the Debtor believes it will cost $18,000 to $20,000 to replace and install the HVAC units and ductwork.

## CONCLUSIONS OF LAW

The Debtor maintains that Redstone's second mortgage is wholly unsecured and not protected from modification by 11 U.S.C. § 1322(b)(2). Redstone counters that there is sufficient equity in the property to protect its claim from § 1322(b)(2)'s antimodification provision which bars a Chapter 13 Plan from modifying the rights of holders of claims secured only by real property that is the debtor's principal residence.

Section 1322(b)(2) provides that a debtor can "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2). The Eleventh Circuit has held that a junior lien on a debtor's principal residence can be avoided in a Chapter 13 case if the security interest is wholly unsecured. Tanner v. FirstPlus Financial, Inc. (In re Tanner), 217 F.3d 1357 (11th Cir. 2000); *See also* Fisette v. Keller (In re Fisette), 455 B.R. 177, 182 (8th Cir. BAP 2011)(holding § 1322(b)(2) does not bar a Chapter 13 debtor from stripping off a wholly unsecured lien on the debtor's principal residence); Zimmer v. PSB Lending Corp. (In re Zimmer), 313 F.3d 1220 (9th Cir. 2002)(finding the Bankruptcy Code's antimodification protection is only available to holders of secured claims); Lane v. W. Interstate Bancorp (In re Lane), 280 F.3d 663 (6th Cir. 2002)(finding the Code's antimodification provision permits modification of the rights of wholly unsecured homestead mortgages); In re Bartee, 212 F.3d 277 (5th Cir. 2000)(explaining that although a wholly unsecured claim is actually secured by a lien, it may be considered unsecured for purposes of § 1322(b)(2); and McDonald

4

v. Master Fin. Inc. (In re McDonald), 205 F.3d 606 (3rd Cir. 2000)(determining a wholly unsecured mortgage on a Chapter 13 debtor's residence is not subject to the Code's antimodification clause).

In the Eleventh Circuit case of In re Tanner, a Chapter 13 debtor filed a complaint to "strip off" a wholly unsecured junior mortgagee's lien on her principal residence. The Eleventh Circuit held that a wholly unsecured lien on a debtor's principal residence is not protected from modification under § 1322(b)(2). In re Tanner, 217 F.3d at 1360. The Eleventh Circuit wrote:

> [T]he only reading of both sections 506(a) and 1322(b)(2) that renders neither a nullity is one that first requires bankruptcy courts to determine the value of the homestead lender's secured claim under section 506(a) and then to protect from modification any claim that is secured by any amount of collateral in the residence. . . . Any claim that is wholly unsecured, however, would not be protected from modification under section 1322(b)(2). To hold otherwise and extend the antimodification clause to even wholly unsecured claims would vitiate the *Nobleman* Court's pronouncement that '[debtors] were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim.' 508 U.S. at 328, 113 S.Ct. at 2110.

*Id.; See also* Wells Fargo Bank v. Scantling (In re Scantling), 754 F.3d 1323, 1327 (11th Cir. 2014)(finding "Chapter 20" debtors are entitled to strip off wholly unsecured residential liens, stating "*Tanner* and our sister circuits correctly understand *Nobelman* to stand for the proposition that for a claim to be 'secured' and trigger the antimodification provisions of § 1322(b)(2), the collateral must have at least some value, as stated by the unambiguous language in § 506(a)").

The Court having considered the testimony and evidence presented in this case finds that Redstone's second mortgage is not wholly unsecured and is protected from modification pursuant to 11 U.S.C. § 1322(b)(2) as the fair market value of the property exceeds the balance of the first mortgage which the parties stipulated totals $298,431.98.

Redstone's appraiser valued the Debtor's principal residence at $365,000 in its current condition. Based on the evidence and testimony at trial, the Court finds that the value should be further adjusted based on two factors the Court believes the appraiser failed to take into account. First, the appraiser admitted she made an error on the appraisal by indicating there were no physical deficiencies or adverse conditions affecting the livability of the property. At trial, the appraiser conceded the property is uninhabitable in its

current condition without a kitchen, air conditioning, and other necessities. Second, the Court the notes that the three comparable sales used in the appraisal were finished homes. None of the comparable sales included homes sold in an "as is" condition. Although the appraiser made an adjustment for the unfinished condition of the Debtor's home, the Court finds that the sale of unfinished homes would potentially have been more appropriate. Based on the forgoing, the Court finds that the appraised value should be reduced by $15,000 to account for these additional factors.

The Court further finds that Redstone's appraisal should be reduced by an additional $23,000 based on the Debtor's testimony regarding the inadequacy of the allowances made for landscaping, and HVAC units. The appraiser included an allowance of $5,000 for landscaping and $15,000 for HVAC units using an industry cost handbook and her experience as a certified appraiser. Although the Debtor is not a licensed real estate appraiser or contractor, the Court found his testimony to be credible and entitled to more weight based on his actual experience purchasing the material used to construct this home and his past experience installing landscaping on the same lot. The Debtor supported his estimates for landscaping in the amount of $25,000 and replacing the HVAC in the amount of $18,000 based on the amounts he previously paid for landscaping the same lot prior to the 2011 tornado and the actual cost of the HVAC units that were stolen from the current home.

Reducing the appraiser's $365,000 opinion of value by an additional $15,000 as discussed above and by $23,000 for landscaping and HVAC, the Court finds that the fair market value of the home is $327,000 in its current unfinished condition pursuant to 11 U.S.C. § 506(a). Accordingly, Redstone's second mortgage is not wholly unsecured and is protected from modification pursuant to 11 U.S.C. § 1332(b)(2).

An Order consistent with this Memorandum Opinion will be entered separately.

ORDERED **this date: July 1, 2016.**

                                            **/s/ Clifton R. Jessup, Jr.**
                                            **Clifton R. Jessup, Jr.**
                                            **United States Bankruptcy Judge**